Argued January 7, affirmed March 10, 1971

KELLY, *Appellant, v.* McBARRON ET AL,
*Respondents.*
482 P2d 187

* * *."

*Vincent G. Robeson,* Lake Oswego, argued the cause and filed a brief for appellant.

*Raymond J. Salisbury,* Grants Pass, argued the cause for respondents. With him on the brief were Schultz & Salisbury, Grants Pass.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, HOWELL, and BRYSON, Justices.

HOLMAN, J.

Plaintiff filed an action for damages alleging that defendants had wrongfully and maliciously filed a mechanic's lien. The case was tried by the court without a jury. The trial judge found for the defendants and plaintiff appealed.

Plaintiff and the defendant McBarron were lumber brokers. The corporate defendant was the creature of the defendant McBarron, who hereinafter will be referred to as if he were the sole defendant. Plaintiff, a resident of Texas, placed an order with defendant in Oregon for some laminated wooden arches for a contractor who was a customer of plain-

tiff. The terms were "f.o.b. Odessa, Texas." The order was placed by the defendant with a mill in Oregon.

The time specified for shipment passed without shipment having been made, because the order constituted less than a carload lot, and it would not have been economical for defendant to make such a shipment without including a filler. A "filler" is accompanying merchandise sufficient to make up a minimum-rate carload lot of 34,000 pounds and which has the same approximate destination as the primary order. The order and its acceptance said nothing about a filler. However, during the pendency of the order, there were telephone calls and correspondence between the parties relative to a filler.

Finally, plaintiff, after having been contacted by the mill, purchased the merchandise manufactured pursuant to defendant's order directly from the mill and requested that it be shipped to him, even though it did not qualify for carload rates. The lien in question was subsequently filed in Texas by defendant for the contract price which plaintiff had agreed to pay to defendant for the material.

There is a dispute in the testimony as to whether it is the unspoken rule, if nothing is said to the contrary, that all offers between wholesalers to sell merchandise f.o.b. destination are based on freight at the carload rate and, therefore, that the merchandise will not be shipped until a filler has been arranged.

Plaintiff testified that before he dealt directly with the mill he called defendant's place of business and talked to an employee of defendant and that the order was mutually cancelled. Defendant testified he knew nothing of such a cancellation and thought that

the shipment had gone forward pursuant to his order. Defendant's employee with whom plaintiff claimed to have talked was not called as a witness by either party.

After the order arrived in Texas, defendant wrote to plaintiff, as follows:

"Also relieved the laminates arrived on the LCL car shipped August 20 by Timber Laminators per your instructions to them to get it away regardless of freight costs. We haven't received their billing yet and will attempt some sort of a compromise between them, you, and us on the extra freight cost. We, like you, were in here most competitively with a 95.00 ft. cost, and, as Timber Laminators advised us, they already cut the price to you prior to shipment to help out. So how much relief they will go along with, I do not know. Possibly a letter from you to them might help."

Plaintiff did not respond to this communication. Three and one-half months later, not having received payment for the order, defendant filed a lien for the full contract price.

When plaintiff found out from his customer that defendant had filed a lien, he contacted defendant for the purpose of getting the lien released. Defendant testified that this was the first time he had any knowledge that plaintiff had dealt directly with the mill and had paid for the merchandise. To secure the removal of the lien, plaintiff paid defendant the portion of the lien which would have equaled defendant's profit plus an additional amount covered by another lien which defendant had filed pursuant to another order from plaintiff. The amount collected on the other lien included the sum of $537 to which defendant clearly was not entitled.

Plaintiff does not purport to name his cause

of action. He alleges "* * * defendants * * * did willfully, wrongfully and maliciously cause a mechanics lien to be filed * * *"; and "[t]hat as a result plaintiff was required to pay defendant's demand in the amount of $1116.77 * * *." He also alleges damages to his business reputation from the filing of the lien.

We believe that plaintiff's cause of action was intended to be the civil counterpart of malicious prosecution which Prosser calls wrongful initiation of a civil suit. Prosser, *Torts* 870, § 114 (3d ed 1964). "Malice" is necessary but, in this context, it means only that the proceeding was begun primarily for a purpose other than an adjudication of the claim. Prosser, *supra* at 875. Presuming that the malicious filing of a mechanic's lien is sufficient to constitute the wrongful initiation of a civil suit, we believe the condition of the evidence was such that the trial judge could find a lack of malice.

■ Whether or not defendant filed the lien maliciously is determined, primarily, by whether the order had, in fact, been cancelled by plaintiff and the cancellation acquiesced in by defendant. We believe that, under the evidence, it was an open question of fact for the court. Plaintiff's failure to respond to defendant's letter relative to the shipment which was written after plaintiff had received the order is not a normal omission by plaintiff if, in fact, the order had previously been cancelled. We believe this failure, plus defendant's testimony that he knew nothing of the cancellation and supposed that the material had been shipped pursuant to his request, made a question of fact as to whether or not the lien was filed maliciously. Because we take this view of the matter, it is not necessary to determine whether plaintiff's

proof meets all of the other requirements of a cause of action for the wrongful initiation of a civil suit.

Plaintiff argues that the filing of the lien by one broker against another is unheard of; that the lien was invalid under Texas law; and that the lien was filed as if the broker were the builder when defendant knew this was not the case—all of which proves defendant's malice. Defendant was a layman and not a lawyer. He did not consult a lawyer before filing a lien. Although the facts which plaintiff argues can be considered evidence of malice, we do not believe, in view of the other evidence, that a finding of malice is required as a matter of law.

As previously mentioned, defendant had filed another lien on another order from plaintiff on which he collected $537 to which he was not entitled. Plaintiff contends that defendant required that both liens be paid before defendant would release the lien on which this action was filed. Defendant contends that by the payment the parties were mutually settling their differences concerning both liens.

2, 3. The difficult question in the case, though it is not emphasized by the parties' briefs, is whether this extraction of $537 from plaintiff on the second lien was sufficiently pleaded to entitle plaintiff to recover. We have come to the conclusion that it was not. It may well be that plaintiff had a cause of action for abuse of process to the extent of $537. Abuse of process is the perversion of legal procedure to accomplish an ulterior purpose when the procedure is commenced in proper form and with probable cause. However, we do not believe this is the cause of action plaintiff pleaded.

The judgment of the trial court is affirmed.