**FOOTHILL INDUSTRIAL BANK, a Colorado corporation, Appellant (Defendant),**

v.

**Thomas T. MIKKELSON and Kaye D. Mikkelson, d/b/a Tom's Welding Service, Appellees (Plaintiffs).**

No. 5304.

Supreme Court of Wyoming.

Feb. 3, 1981.

Margaret A. Taylor and Michael A. Maycock, of Daly, Maycock & Anderson, P. C., Gillette, for appellant.

Dwight F. Hurich, of Hawkey & Sowada, Gillette, for appellees.

Before ROSE, C. J.*, McCLINTOCK, RAPER **, THOMAS and ROONEY, JJ.

McCLINTOCK, Justice.

Foothill Industrial Bank[1] appeals from judgment of the district court of Campbell County, Wyoming, awarding $2,500.00 compensatory and $500.00 punitive damages to Thomas and Kaye Mikkelson. The action grew out of the publication on December 6, 1979, of a notice of real estate mortgage foreclosure sale, in which Foothill claimed default by the Mikkelsons in the covenants of a mortgage delivered as security for a loan. On November 28, the Mikkelsons had filed suit to enjoin the foreclosure[2] and only the one publication was made. On December 20, the Mikkelsons filed the present action seeking damages for alleged abuse of process and libel. The Mikkelsons base their right of recovery on allegations that there was no default, the notice was false, and the proceedings were instituted for a malicious purpose, therefore constituting both abuse of process and libel, with resulting injury. Foothill's position is that there were defaults justifying foreclosure and that in any event a privileged situation existed with no showing of actual malice. It also asserts the right to proceed with the foreclosure. Although implicitly finding that the Mikkelsons had failed to comply with some of the covenants of the security instruments, the trial court found that "[t]here was no default on which a foreclosure could be based," entered judgment for the plaintiffs and denied the bank's prayer for foreclosure.

## THE SECURITY AGREEMENT

Mr. and Mrs. Mikkelson purchased a parcel of land in Campbell County with the intention of constructing a building thereon to house a welding shop. Foothill loaned them $70,000.00 at an annual interest rate of 16%. The total amount of the obligation, including finance charge, was $116,795.28, payable in 84 installments of $1,390.42, due on or before the first day of each month beginning August 1, 1978. As part of the loan transaction the Mikkelsons executed four instruments: A Promissory Note, Se-

---

* Chief Justice since January 5, 1981.

** Chief Justice at time of oral argument.

1. Inadvertently captioned in the pleadings as Foothills Industrial Bank.

2. This information is obtained from the counterclaim, which, in addition to alleging the filing of the suit, also alleges that as a result thereof Foothill stopped publication until these matters could be resolved. The record does not contain a reply, nor is anything more shown about this suit.

curity Agreement, Financing Statement, Disclosures; a Mortgage Deed with Release of Homestead; a Deed of Trust; and a Security Agreement—Certificates of Deposit.

The note permits the holder thereof, "in lieu of acceleration of maturity," to charge 5% of any installment not paid within 10 days of the due date. But at the opinion of the holder the unpaid balance may become " . . . immediately due and payable without notice or demand if (a) any payment required by this note is not made when due, or (b) a default or event of default occurs under any loan or security agreement or other instrument executed as security for or in connection with this note . . . ."

The mortgage contains covenants to pay the indebtedness, pay all taxes and assessments and keep the buildings thereon insured in an amount not less than $116,-795.28. In case of default in the payments, "or in case default shall be made in any of the covenants and agreements hereof, then the whole indebtedness hereby secured with the interest thereon shall become due and payable," and the mortgagee may proceed pursuant to law to foreclose on and sell the property.

The deed of trust contains covenants promptly to pay all principal, interest and other sums of money due, keep the improvements insured in an amount not less than the amount due, and promptly pay all taxes, assessments and other liabilities, obligations and encumbrances as they become due. Time is of the essence and if there is any default in payment or breach of any of the covenants the whole of the indebtedness may "at the option of the legal holder thereof, become due and payable and this Deed of Trust be foreclosed in the manner and with the same effect as if said indebtedness had matured." Indulgence in not exercising the option to accelerate shall not, even though repeated, be construed as a waiver of the right to exercise the option at any time thereafter.

By the terms of the fourth instrument, a certificate of deposit in the amount of $10,-000.00 was deposited with the bank as additional security for the loan. Foothill is authorized to sell the collateral and apply the proceeds against the debt. The debtor waives any right "to require Secured Party to proceed against any person, exhaust any collateral, or pursue any other remedy which Secured Party may now or hereafter have."

On September 29, 1978, Foothill released a portion of the mortgaged premises so that the Mikkelsons could convey this portion to John A. Brown and Everett Jack Pownall. The bank financed this purchase and provided funds so that an additional building could be constructed. The Mikkelsons contend that this conveyance was made in violation of protective covenants pertaining to the subdivision in which the premises are located.

## THE TRANSACTIONAL HISTORY

All transactions relating to the repayment of the loan were recorded by the bank on an installment loan ledger card. It shows that all installments due through January of 1979 were paid within the ten-day grace period. Beginning in February and running through September, the payments were consistently late and a late-charge in the amount of $69.52 was entered for each of those months except March and May. No payment at all was received in July, but Robert Stevens, an assistant vice-president of the bank, testified that on August 20 the bank received $2,780.74 by wire exchange from a Gillette bank and on August 30 an additional $332.00. Mikkelson testified that these amounts were forwarded on advice of his attorney after he had been informed by telephone conversation with Stevens that the bank would receive no more payments. Sometime during August or early September, the matter was turned over to a Cheyenne legal firm for handling. On September 11 the Cheyenne attorneys addressed a letter to the Mikkelsons advising them that the note and mortgage were past due, that default had occurred and

"... this correspondence constitutes Foothill Industrial Bank's written notice of intent to foreclose the mortgage by advertisement and sale.

"We shall begin foreclosure proceedings ten days after your receipt of this letter." However, the ledger card shows that on that same day a late-charge of $69.52 was entered. The July and August payments were not credited on the ledger card until September 25 and 26, when Stevens was advised to do so by the bank's attorneys.

Although the attorney's letter of September 11 indicates that it was to be sent by certified mail, the date of delivery is not shown. Mikkelson testified to the receipt thereof without mention of the date. Mrs. Mikkelson testified that it could have been received around September 14. On that date, although as she testified not because of the letter, she issued and mailed to Foothill a check in the amount of $1,459.94 (being the amount of the monthly payment, plus $69.52, the amount of late-charge). The issuance of this check was substantiated by a copy of the appropriate page of the check register kept by the Mikkelsons, but Stevens testified that the check was never received by Foothill, and the Mikkelsons admitted that it had never been paid by their Gillette bank.

Notwithstanding the attorneys' statement that foreclosure would be commenced ten days after receipt of the notice, no publication was commenced until December 6. Prior to that, but at a time not shown by testimony of either party, the Mikkelsons received from the bank's attorneys a typewritten copy of the notice that was published on December 6. This notice states that written notice of intent to foreclose had been given to the mortgagors by "certified mail with return receipt, mailed to the last known address of the record owner on September 11, 1979." However, the loan ledger card shows that on October 2, 1979, the bank credited the mortgage account with a payment in the amount of $1,390.42, crediting this to the payment due September 1, 1979. The card also shows payments in the same amount received and credited November 8 for the October payment; December 3 for the November payment; January 7, 1980 for December; and February 5 for January. At the trial on March 6, Stevens testified to the application in this manner and further that no other payments had been received as of that date. No late-charges were entered after September 11.

It is not clear from the published notice just what specific defaults Foothill claimed to exist. It stated therein:

"That default has been made in the payment of said mortgage note and in the terms and conditions of the mortgage described above in that the said Thomas T. Mikkelson and Kay [sic] D. Mikkelson, d/b/a Tom's Welding Service, have not made the payments as required by the said mortgage and mortgage note; that in accordance with the terms and provisions of said mortgage, the mortgagee has elected and does hereby elect to declare the entire remaining indebtedness due and payable and that there is now due, owing and unpaid as of the date of this notice the sum of $97,329.40, principal and interest included, less rebate in the amount of $32,551.00 resulting in the total amount due the mortgagee as of the date of this notice, of $64,778.40...."[3]

## PROCEEDINGS IN THE TRIAL COURT

The complaint is in two counts, the first for an alleged abuse of process and the second for libel. The first count says nothing about the status of the obligation, but alleges that the foreclosure was induced by the fact that the developer of the property wanted to have the two severed portions of

---

3. Checking the amount claimed against the balances shown on the loan ledger card, we find that the $97,329.40 claimed as due represents what was due after credit on October 2 of the payment due September 1. Furthermore, no mention is made in the notice of payments credited in the Denver office on November 8 and December 3. This card shows the amount due as of December 6 as $94,548.56. The January and February payments further reduced the balance to $91,767.72, subject to rebate for unearned interest.

the lot restored as one; that to that end the bank had advised the Mikkelsons that unless something was done to get title to the entire lot in one party it would refuse to accept future payments and would foreclose; that plaintiffs continued to tender payments, all of which, except one for September, 1979, had been accepted by the bank; that the bank maliciously and willfully instituted the foreclosure sale "to coerce plaintiffs into selling or buying property against plaintiff's [sic] wishes"; that this is "an improper and perverse use of both statutory and contractual process." The second count alleges that the publication on December 6 defamed the character and credit of plaintiffs "by accusing plaintiffs of defaulting on a mortgage held by defendant" and that the publication stating that plaintiffs "had defaulted on payment of the mortgage was false as plaintiffs had tendered every mortgage payment."

Foothill's answer admitted the publication but denied abuse of process or libel. It alleged affirmatively that the plaintiffs were late with mortgage payments in each of six months and are "presently in arrears for one complete payment for the month of September, 1979." This defense alleges that the foreclosure is justified by the terms of a mortgage deed, as well as the deed of trust which had been executed by the Mikkelsons. By counterclaim it asked that it be permitted to continue with the foreclosure and that it recover damages for interference with those proceedings. At the trial, it asked for and received permission to amend its answer to include three additional affirmative defenses, being the alleged defaults of the Mikkelsons in failing to pay taxes and assessments and adequately to insure the building. At the trial, it was also shown without objection that a foreign judgment against the Mikkelsons had been filed in Campbell County prior to January of 1979 and that another judgment had been entered against them in an action in the Campbell County district court. These judgments remained unsatisfied at the time of trial.

After trial to the court, the trial judge found generally in favor of the plaintiffs, with these additional and pertinent findings:

"3. That the defendant alleges that one mortgage payment was not made in September, 1979, but that defendant did not send plaintiffs a request for another payment;

"4. That the one (1) payment deficiency appears to be deminimus [sic] as defendant held a $10,000.00 Certificate of Deposit owned by plaintiffs as security on the note which could have been used to cover the deficiency;

"5. That the defendant had knowledge of the amount of insurance coverage and the foreign judgment proven by the letter of January 16, 1979;

"6. That the 1979 property taxes were not delinquent and that defendant had funds available to pay the taxes if unpaid;

"7. That there was no default on which a foreclosure could be based."

In addition to awarding the Mikkelsons damages, the court directed the Mikkelsons to "pay to defendant the September 1979 payment on the mortgage and all late charges," and to "pay all assessments owed to Owners Association and increase the insurance policy on the building to cover the entire mortgage amount." Nothing was said about the judgment liens.

## RIGHT TO ACCELERATE THE DEBT BECAUSE OF DEFAULTS

■ The principal question we must consider is whether the trial court erred in ruling that "there was no default on which a foreclosure could be based." Black's Law Dictionary, 5th Ed. 1979, defines "default" as "an omission of what ought to be done"; "an omission or failure to perform a legal duty." Foothill contends that the following omissions existed and were defaults within the provisions of the loan agreement:[4] (1)

---

4. In considering these questions we recognize that not all the covenants are set forth in each

of the agreements. However, the four instruments were contemporaneously executed as

failure to make the payment due September 1, 1979; (2) failure to make timely payment of 1979 taxes; (3) failure to keep the property insured to cover the entire mortgage amount; (4) failure to pay assessments against the property; and (5) failure to satisfy or secure the release of the two judgment liens against the property.

The Mikkelsons do not appear to deny that they failed in some respects to do what was required of them under the agreement. Their position appears to be that such failures were either waived by the bank or were of such an unsubstantial nature, particularly in view of the existence of the pledge of the $10,000.00 certificate of deposit, that foreclosure of the mortgage was unjustified. The trial judge found that the 1979 taxes were not delinquent but implicitly found that the insurance was not for the proper amount, although that fact was known to the bank. He also found that the bank knew of the first judgment but made no mention of the second judgment. He made no special mention of the assessments except to order that they be paid. He also ordered the Mikkelsons to make the September payment, together with all late charges. It appears that he likewise must have considered the omissions unsubstantial although he referred only to the September payment, considering it *de minimis* because the bank held the $10,000.00 certificate of deposit as security "which could have been used to cover the deficiency."

■ We are not convinced that Foothill's contentions one, two and three are sustained by the evidence but believe that four and five are sustained and that defaults existed on December 6, 1979, justifying the institution of foreclosure proceedings.

### Failure to Pay Assessments

The property in question is located in Interstate Industrial Park, Campbell County, Wyoming. The Declaration of Covenants, Conditions and Restrictions of the

Industrial Park requires that each lot owner become a member of the Interstate Industrial Park Property Owners Association and that the owner pay a monthly assessment:

> "... All such assessments that are not paid when due shall become a lien on the land and shall remain a lien until fully paid...."

Tom Mikkelson testified that the monthly assessment was between $25.00 and $30.00 and that these assessments had not been paid. The record does not reflect the total amount of assessments due; however, appellees indicate in their brief that the amount owed is approximately $500.00.

■ The trial judge found that the bank had funds with which to pay the assessments but ordered them paid by the Mikkelsons. While we recognize the general rule that courts will not declare a default if assessments are paid before the foreclosure suit is initiated, *Kaminski v. London Pub, Inc.*, 123 N.J.Super. 112, 301 A.2d 769, 771 (1973), or that a mortgagee may waive a condition or because of some act be estopped from asserting the right, *Cook v. Merrifield*, Fla.App., 335 So.2d 297, 299 (1976), neither of these situations exists in the case at bar. The assessments were not paid at the time that foreclosure proceeding was instituted; nor did the bank indicate that these assessments need not be paid. They clearly constituted an encumbrance against the property within the language of the trust deed.

### Default and Failure to Pay Judgment Liens

The final default alleged by Foothill arises because of two judgment liens. The first judgment lien was a foreign judgment in the amount of $1,881.74. While the record is not clear, it appears that this judgment was filed in Campbell County, Wyoming, in such a way as to constitute a proper lien against the Mikkelson property. In a letter addressed to Tom Mikkelson,

part of one transaction and we read them as constituting one agreement. *Williams v. Waugh*, Wyo., 593 P.2d 583, 586 (1979); and

*Bank of Commerce v. Williams*, 52 Wyo. 1, 24, 69 P.2d 525, 533 (1937).

dated January 16, 1979, the loan documentation manager of Foothill stated in part:

"Also, we understand that your attorney, Mr. Biff Hawkey, is trying to clear a judgment on the property in the amount of $1,881.74 by Wes-Kan Oil Company. It is very important that this judgment be cleared as soon as possible. Any further delay will result in our company paying the judgment and charging your account accordingly."

While this letter indicated that the bank would pay the judgment, this was apparently not done, and that judgment was still unpaid at the time of trial.

On May 9, 1979, a second judgment was entered against Tom Mikkelson in the amount of $3,354.30 in a civil action decided in Campbell County. This judgment lien was also unpaid at the time of trial.

 The New Jersey court has held that municipal liens may be neutralized if paid before the complaint is filed, *Kaminski,* supra, 301 A.2d at 771, and we believe that the same would be true as to judgment liens. However, the liens in the case at bar were not paid; therefore that rule cannot be applied here. The failure to satisfy or secure the release of these liens is a failure to pay encumbrances as they become due, a clear omission on the part of the Mikkelsons to perform their obligations under the security agreement.

 Had the bank followed through with its intention to make an additional advance so as to release the judgment, it might be said that it made an election not to declare a default. It is arguable that the letter had the effect of leading the Mikkelsons to believe that no default would be declared.[5] It is clear, however, that no similar letter was written with respect to the second judgment obtained in May of 1979 and the letter could in no way be construed as indicating

that subsequent judgments would be paid by the bank. Moreover, the deed of trust in the case at bar provides that no waiver will be taken as a waiver of subsequent obligations. We believe this provision of the deed of trust to be controlling. If, then, Foothill waived its right to accelerate the mortgage because of the first judgment lien, this action did not preclude it from acceleration for subsequent judgment liens.

## ELECTION OF REMEDIES

 The Mikkelsons also argue with respect to the September, 1979, payment that acceleration was not proper because the $10,000.00 certificate of deposit was available to assure such payments and it was only equitable to require Foothill to look to that deposit for that purpose. This argument, which apparently appealed to the trial judge and may have been considered by him as equally applicable to the other defaults, ignores the fact that the certificate of deposit was part of the overall security for the note. There was no agreement that the bank would enforce its rights piecemeal. If certain obligations were not met, then it was the option of the bank to declare the whole amount due and foreclose on all security necessary to that end. It was not required to use bits and pieces of the hypothecated security to keep the Mikkelsons current in the performance of their obligations. If certain of those obligations were not met, it was the option of the bank to declare the whole amount due and proceed with foreclosure. As was said in *Doeller v. Mortgage Guarantee Co.,* 166 Md. 500, 171 A. 856, 859 (1934):

"The appellant contends, and we think properly, that, if the mortgagor delayed paying the interest beyond the day on which it became due and payable, the entire mortgage debt became due and payable, and that the length of the delay

---

5. However, see *Farmers and Merchants Bank v. Copple,* 190 Kan. 170, 373 P.2d 219 (1962), holding that payment of insurance premiums by the mortgagee did not prevent the mortgagee from declaring a default, and *Union Cent. Life Ins. Co. v. Puckett,* 97 Kan. 428, 155 P. 930 (1916), holding that exercise of the right to pay taxes did not waive the right to foreclose for default in payment thereof. Since there was a clear and unwaived default as to the second judgment lien, it is not necessary for us to consider whether the encumbrance represented by the first lien was waived.

was not material, Wiltse on Foreclosure of Mortgages, § 43, 41 C.J. 845. For, if the default existed at all, it was by the agreement of the parties a complete, indivisible, and consummate thing, and, unless affected by the doctrine of waiver, its mere duration would not affect its qualities, incidents or effect. While the strict enforcement by the mortgagee of the rights flowing from it may appear, and, indeed, may be harsh and oppressive, that consideration cannot be regarded as material in such a proceeding as this where the default rests upon the deliberate agreement of the parties, where the right to the remedy and the remedy itself are definitely fixed by statute, and where the duty of the court to recognize the remedy and the mortgagee's right thereto is mandatory."

This statement from *In re Stephen Wise Housing Project, Etc.*, 38 Misc.2d 455, 236 N.Y.S.2d 785, 789 (1962), is pertinent:

"It is fundamental that the holder of a bond and a mortgage has a double remedy. He may choose to enforce the obligation of the bond in accordance with its terms and obtain a personal money judgment against the debtor ... Or he may resort to the collateral represented by the mortgage instrument and foreclose his lien on the real property...."

*Right of Foothill to Proceed with Foreclosure*

Foothill may have had a double remedy, that is, whether to look to the certificate of deposit as a source of interim payments, or to declare the whole indebtedness due and foreclose. The choice was its and not the court's. We think it clear that the Mikkelsons, as of December 6, 1979, had not performed material covenants of the note and security instruments. Their continuing failure to make timely payment of the monthly installments through November of 1979 may have been waived by the election of the bank to enter late charges or by acceptance of late payments without objection, but it cannot be denied that the Mikkelsons had not paid the assessments nor had they paid the encumbrances represented by the judgments. We conclude that substantial defaults existed at the time Foothill forwarded to the Mikkelsons a copy of the intended notice of foreclosure, as well as on December 6, 1979, the date of publication of the notice.

Moreover, the record is clear that the payment due February 1, 1980, had not been paid at the time of trial. In *Jones v. Clark*, Wyo., 418 P.2d 792, 796–797 (1966), we stated this rule:

"... [I]t is said in 55 Am.Jur., Vendor and Purchaser, § 119, p. 595, 'However, the vendor's acceptance of one or more payments subsequent to the time specified in the agreement does not necessarily waive his right to object to the vendee's delinquency as to future payments, or preclude him from insisting on strict performance in the future and declaring a forfeiture for the vendee's default as to future payments,' citing *Boone v. Templeman*, 158 Cal. 290, 110 P. 947, 139 Am.St.Rep. 126; Annotation 9 A.L.R. 1001, ..."

It is not for this court to hold that these breaches of the security agreement, not waived by the bank, are to be considered unsubstantial and such as not to justify foreclosure. In *Nylen v. Geeraert*, 246 Md. 4, 226 A.2d 878, 882 (1967), where the security agreement provided that in default in the payment of taxes all principal should, at the option of the note holder, become due and payable, the court held that the taxes became in default when they commenced drawing interest. Suit was brought to enjoin foreclosure proceedings, which was granted. On appeal, the Court of Appeals of Maryland made this observation:

"The trial judge could not 'bring ... [himself] to deny this injunction.' One can share his sympathy for the plight of the appellees but one cannot disregard the rights of the appellants, however strict and uncompromising their attitude may be...."

The court then referred to *Doeller*, supra, (where the mortgagor had delayed paying

interest for only three days) and quoted the same passage hereinabove quoted. At 755, 756.

We conclude that on December 6, 1979, the Mikkelsons had failed to make payments required of them by the security instruments and Foothill was entitled to proceed with foreclosure.

## ABUSE OF PROCESS

Foothill argues that the elements of the tort of abuse of process have not been established by the Mikkelsons in this case. *Younger v. Solomon*, 38 Cal.App.3d 289, 113 Cal.Rptr. 113 (1974), is cited, in which it is said that "[t]he term 'process' as used in the tort of abuse of process has been broadly interpreted to encompass the entire range of procedures incident to *litigation*." (Emphasis added.) This same definition is found in *Barquis v. Merchants Collection Association of Oakland*, 7 Cal.3d 94, 101 Cal.Rptr. 745, 496 P.2d 817, 824, fn. 4 (1972). In *Amabello v. Colonial Motors, a. k. a. Andy's Motor Service*, 117 N.H. 556, 374 A.2d 1182, 1184 (1977) the Supreme Court of New Hampshire considered a complaint seeking recovery for abuse of process growing out of an attempted sale of an automobile upon which the defendant had claimed a lien. That court refers to an earlier case, cited by Foothill, *Meadows v. Bakersfield Savings & Loan Association*, 250 Cal.App.2d 749, 59 Cal.Rptr. 34 (1967), in which the court said:

"'... [T]he essence of the tort "lies in the misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating injustice... [W]e find no case extending the definition of 'process' to a proceeding that in nowise emanates from or rests upon the authority or jurisdiction of a court." Id. at 753, 59 Cal. Rptr. at 37. The court went on to hold that recording a notice of default and publishing a notice of trustee's sale did not constitute process. We hold that the notice issued under RSA ch. 450 did not involve process, and thus the trial court was correct in dismissing the plaintiff's tort claim.'"

We believe this view to be correct, but looking at the pleadings and evidence in a liberal light, that is, not attempting to restrict the proof to some narrow and precise categorization of the alleged tort, we conclude that there is no evidence upon which the Mikkelsons can claim wrongful conduct on the part of Foothill. If the bank had the right to accelerate the note, it is difficult to see how it could have been guilty of any wrong in attempting to assert that right. Obviously, all the Mikkelsons had to do to thwart any attempt to foreclose the mortgage which they had executed was to conform to the terms of the note and security agreements. It is not sufficient to establish wrongful conduct to claim that Foothill wanted to get the severed portions of the lot back into one ownership. In *United States v. Winters*, D.C. Wyo., 224 F.Supp. 8, 9 (1963), the court said that "'the motive which impels the mortgagee to seek foreclosure is immaterial and irrelevant,'" citing Glenn on Mortgages, § 58, p. 384. This quotation from *Dickerman v. Northern Trust Company*, 176 U.S. 181, 190, 20 S.Ct. 311, 44 L.Ed. 423 (1900), also cited in *Winters*, is pertinent:

"If the law concerned itself with the motives of parties new complications would be introduced into suits which might seriously obscure their real merits. If the debt secured by a mortgage be justly due, it is no defence to foreclosure that the mortgagee was animated by hostility or other bad motive...."

The cited section from *Glenn*, supra, refers to the "clean hands rule" in proceedings whereby one asks collection of his loan by application of the security. "To worry about the mortgagee's motive, under such circumstances, is not only erroneous; it is really absurd." 1 Glenn on Mortgages, § 58, p. 388.

We find no basis upon which to conclude that Foothill was guilty of any tort in attempting to collect under its mortgage.

## LIBEL

The case at bar hardly seems the vehicle with which to make any notable addition to

the law of libel in this state. The Mikkelsons do little to assist by the mere assertion that

"... publishing the notice when there has been no default or at least the default has been waived did libel Appellees. The trial court correctly found that even the statutory proceeding can be libelous if accomplished as in this case."

In *Spriggs v. Cheyenne Newspapers, Inc.*, 63 Wyo. 416, 426, 182 P.2d 801, 803–804 (1947), this court said that under Art. I, § 20 of the Wyoming Constitution, providing that " 'the truth, when published with good intent and (for) justifiable ends,' " shall be a sufficient defense, the only issues are whether the statements were true and were " 'published with good intent and (for) justifiable ends.' " If the bank was mistaken in its belief that the continuing delinquency of the Mikkelsons in the monthly installments constituted a valid basis for acceleration of the note—this for the reason that the bank had at first elected to pursue a different remedy and waived later defaults—it was nevertheless true that payments required by the security agreements had not been made and that these failures constituted defaults. We must then conclude that the notice alleged to be libelous, although general in its terms, was necessarily true. That the notice was published with good intent and for justifiable economic ends seems hardly subject to argument. The Mikkelsons had persistently failed to comply with the terms of their agreement; the bank had consistently sought to bring them into compliance; its attempt to accelerate the obligation and foreclose the security was in the protection of a legitimate business interest. We hold that an actionable libel has not been shown.

The judgment is reversed and the cause remanded to the district court with directions to dismiss the action and to proceed with foreclosure of the security agreement.