Frank **BOSLER**, Appellant (Defendant),

v.

Ashton **SHUCK**, Appellee (Plaintiff).

No. 84–174.

Supreme Court of Wyoming.

March 3, 1986.

C.M. Aron, Aron & Hennig, Laramie, for appellant.

Cary R. Alburn III, Laramie, for appellee.

Before THOMAS, C.J., and ROSE,[*] ROONEY,[**] BROWN and CARDINE, JJ.

THOMAS, Chief Justice.

The primary problem presented by this case is the identification of the elements of the tort of abuse of process. Ancillary to this question in the disposition of the appeal are questions about the legal accuracy of the instruction which was given by the trial court setting forth the elements of the tort and the sufficiency of the evidence. Our study persuades us that the instruction given by the district court did not correctly set forth the elements of the tort of abuse of process. We cannot discern evidence in the record which would sustain a recovery for abuse of process under a correct instruction. Consequently, we reverse the judgment of the district court entered upon the jury verdict.

While the parties have structured a more elaborate statement of the issues, we are satisfied that a resolution of the following questions disposes of all of the issues suggested in the briefs and arguments:

1. What are the elements of the tort of abuse of process?

2. Did the district court properly instruct the jury with respect to these elements?

3. Does this record contain evidence which would sustain a verdict finding abuse of process under a proper instruction?

Frank C. Bosler orally agreed to lease certain grazing lands to Shuck Brothers, Inc. Ashton Shuck is the father of the principals in Shuck Brothers, Inc., and he was present at all of the material negotiations and meetings in connection with this case. It is Shuck's position, however, that he was only an employee of Shuck Brothers, Inc., and was not a principal in its affairs. During the approximately 18 months that its cattle remained on the premises, Shuck Brothers, Inc. made regular payments on the pasturage fee. There were some collateral agreements covering haying operations, housing, and the like, for some of which Shuck Brothers, Inc. was entitled to be compensated.

In September of 1982, Bosler discovered that the Shucks were preparing to move their cattle from the leased premises. He inquired about that move, and was assured that the pasturage bill would be settled up before the cattle were moved. Ashton Shuck and two of his sons agreed to meet with Bosler that same evening to settle the bill. Bosler was concerned, however, and contacted an officer in the sheriff's department. The officer explained that he could not prevent the removal of the cattle, but he did offer to take to the Shucks a copy of the statute relating to the pasturage of animals, which he later did.

The meeting to settle the pasturage bill did occur on that evening. There developed a disagreement about the amount due, attributable in part to a dispute over the number of cattle which had been grazing in

---

[*] ROSE, J., retired from the court November 1, 1985.

[**] ROONEY, J., retired from the court November 30, 1985.

the pasture and in part to the proper amount of a set-off due to the Shucks. This meeting continued until after midnight.

Later that morning Bosler discovered that the Shucks were loading the cattle for shipment, and he insisted that they not be moved until the pasturage bill was paid. They went to town together for the purpose of permitting the Shucks to obtain a surety bond to secure the pasturage bill. The Shucks were unable to obtain such a bond, however, and they all went to the county attorney's office with the view of settling the matter there. None of the attorneys on the county attorney's staff were available, so the Shucks agreed to meet Bosler back at the county attorney's office after lunch. They did not appear at that time, and on his return to his home Bosler discovered that the cattle had all been removed.

Thereafter, Bosler subscribed under oath to a criminal complaint filed pursuant to § 29–7–102(b), W.S.1977, which provides:

"If any person causes to be removed from the possession of a lien claimant any property or part thereof which is subject to the lien created by W.S. 29–7–101 through 29–7–106 from the place where the property was located when the lien is perfected, without the written consent of the owner and the holder of the lien or his agent, either originally or by transfer, the person so removing the property affected by the lien is guilty of a misdemeanor. On conviction he may be punished by a fine of not more than seven hundred fifty dollars ($750.00)."

The complaint named Ashton Shuck as well as three of his sons, and an arrest warrant was issued for each of them.

Several months later Bosler encountered Ashton Shuck outside of a bank in Laramie. Soon after that encounter Shuck was arrested, processed by the sheriff's department and released on his own recognizance. After several more months had passed the charge against him was dismissed by the county attorney.

Shuck then brought this action against Bosler for abuse of process, false imprisonment, malicious use of process, and malicious prosecution. The district court granted a summary judgment in favor of Bosler on the claims for false imprisonment, malicious use of process, and malicious prosecution. The court, however, permitted the claim for abuse of process to go to trial.

The trial court denied a motion by Bosler to dismiss the case when Shuck rested. The Court then, over the objection of both parties, gave the following instruction relative to abuse of process:

"Instruction No. 3

"In order to prevail in this case, the plaintiff, Ashton Shuck, must prove by a preponderance of the evidence each of the following elements of abuse of process:

"1. That the defendant, Frank Bosler, made use of the criminal process;

2. That the defendant, Frank Bosler, initiated a criminal process by signing a criminal complaint;

"(a) with a wrongful or ulterior purpose or motive; and

"(b) with malice; and

"(c) with knowledge of the process which would ensue following the signing of the criminal complaint.

"3. That defendant, Frank Bosler, directly participated in the criminal process after he signed the criminal complaint, after the arrest warrant was issued, and prior to defendant, Ashton Shuck's arrest under the warrant which was issued.

4. That the plaintiff, Ashton Shuck, suffered damages which were proximately caused by defendant, Frank Bosler's abuse of process."

The jury returned a verdict in favor of Shuck finding his damages to be $9,000. The district court denied motions by Bosler for a new trial and a judgment notwithstanding the verdict, and judgment was entered upon the jury's verdict. This appeal is taken from that judgment.

Previously this court has recognized the tort of abuse of process both indirectly and directly. *Hurst v. State*, Wyo., 698 P.2d 1130 (1985), citing Comments, Wyoming's Governmental Claims Act: Sovereign Immunity with Exceptions—A Statutory Analysis, XV Land and Water L.Rev. 619, 629 (1980); *Blake v. Rupe*, Wyo., 651 P.2d 1096 (1982), citing *Sampson v. Rumsey*, 1 Kan.App.2d 191, 563 P.2d 506 (1977); and *Foothill Industrial Bank v. Mikkelson*, Wyo., 623 P.2d 748 (1981). In the context of the issues posed here, we have not had occasion to consider this tort directly.

In *Foothill Industrial Bank v. Mikkelson*, supra, at 757, we quoted in part from *Meadows v. Bakersfield Savings & Loan Association*, 250 Cal.App.2d 749, 753, 59 Cal.Rptr. 34, 37 (1967):

" '* * * [T]he essence of the tort "lies in the misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating injustice * * *" ' "

That quotation does capture the gravamen or gist of the tort of abuse of process. Pound explained that "[t]he gist of the action for abuse of process lies in the improper use of process after it is issued. To show that regularly issued process was perverted to the accomplishment of an improper purpose is enough." *Dean v. Kochendorfer*, 237 N.Y. 384, 143 N.E. 229 (1924). Other jurisdictions have adopted this analysis. E.g., *Duncan v. Kent*, Ala., 370 So.2d 288 (1979); *Rondelli v. County of Pima*, 120 Ariz. 483, 586 P.2d 1295 (1978); *Meadows v. Bakersfield Savings & Loan Association*, supra; *Cline v. Flagler Sales Corp.*, Fla.App., 207 So.2d 709 (1968); *Mills County State Bank v. Roure*, Iowa, 291 N.W.2d 1 (1980); *Bonnie Braes Farms, Inc. v. Robinson*, Ky.App., 598 S.W.2d 765 (1980); *Packard v. Central Maine Power Co.*, Maine, 477 A.2d 264 (1984); *Farmers Gin Co. v. Ward*, 73 N.M. 405, 389 P.2d 9 (1964); *Kelly v. McBarron*, 258 Or. 149, 482 P.2d 187 (1971); *Casa Di Sardi, Inc. v. Alpha Motors, Inc.*, 277 Pa. Super. 415, 323 A.2d 288 (1974); *Manufacturers Supply Co. v. Parker*, 103 R.I. 426, 238 A.2d 616 (1968); *Huggins v. Winn-Dix-*

*ie Greenville, Inc.*, 249 S.C. 206, 153 S.E.2d 693, 27 A.L.R.3d 1195 (1967); *Layton v. Chase*, 82 S.D. 270, 144 N.W.2d 561 (1966); *Evans v. Perkey*, Tenn.App. 647 S.W.2d 636 (1982); *Blackstock v. Tatum*, Tex.Civ. App., 396 S.W.2d 463 (1965); *Crease v. Pleasant Grove City*, 30 Utah 2d 451, 519 P.2d 888 (1974); *Tower Special Facilities, Inc. v. Investment Club, Inc.*, 104 Wis.2d 221, 311 N.W.2d 225 (1981). Many of these authorities speak in terms of a perversion of the legal process. Scholars including text writers have agreed with this analysis of the tort of abuse of process. Restatement (Second) of Torts § 682, p. 474 (1977); Prosser & Keeton, Torts, § 121, p. 898 (5th Ed.1985); Goldoftas, Abuse of Process, 13 Clev.-Mar.L.Rev. 163–164 (1964).

It follows from the description of the gravamen of this tort that one of its essential elements is generally recognized as being some wilful act in the use of process which is not proper in the regular conduct of the proceeding. The usual description of the essential elements of the tort of abuse of process, which we now adopt, is that it encompasses (1) an ulterior purpose, and (2) the wilful act in the use of the process which is not proper in the regular conduct of the legal proceeding. Prosser & Keeton, supra, § 121, p. 898. E.g., *Rondelli v. County of Pima*, supra; *Barquis v. Merchants Collection Ass'n of Oakland, Inc.*, 7 Cal.3d 94, 496 P.2d 817, 101 Cal.Rptr. 745 (1972); *Holiday Magic, Inc. v. Scott*, 4 Ill.App.3d 962, 282 N.E.2d 452 (1972); *Blackstock v. Tatum*, supra. In distinguishing the tort of abuse of process from the tort of malicious prosecution or malicious use of process, the courts have noted that it is the second element, that is the act in the use of the legal process which is not proper in the regular prosecution of the proceedings, which sets apart the tort of abuse of process. *Duncan v. Kent*, supra; *Triester v. 191 Tenants Association*, 272 Pa.Super. 271, 415 A.2d 698 (1979); *Crease v. Pleasant Grove City*, supra.

One example of a wilful act in the use of the process which is not proper in the regu-

lar conduct of the legal proceedings is described in *Kelly v. McBarron,* supra. In that case the defendant had filed a lien for some laminated wooden arches. In order to obtain the removal of the filed lien the plaintiff had paid the defendant an agreed upon sum plus an additional amount to satisfy another lien which the defendant had filed pursuant to a different merchandise order. The Supreme Court of Oregon noted that with respect to the amount paid on the second lien the plaintiff might well have had a cause of action for abuse of process had it been properly pleaded. The court identified the requirement of the payment of the additional amount as a perversion of a legal procedure to accomplish an ulterior purpose. Still another example may be found in *Barquis v. Merchants Collection Ass'n of Oakland,* supra, in which the defendant was charged with wilfully and knowingly filing actions in an improper county pursuant to statutorily inadequate pleadings with the intent to impair the rights of the individuals to defend such suits. The Supreme Court of California concluded that such conduct did amount to an abuse of process because it was wilful conduct in the use of process not proper in the regular conduct of proceedings. In that case the court relied upon *Czap v. Credit Bureau of Santa Clara Valley,* 7 Cal.App.3d 1, 86 Cal.Rptr. 417 (1970) in which the credit bureau was charged with abuse of process because it threatened to bring levies on the plaintiff debtor's salary even though it knew that the plaintiff's wages were exempt from garnishment. Such conduct was held in the Czap case to be within the ambit of abuse of process because it would jeopardize the plaintiff debtor's employment and thus induce her to apply her exempt earnings or other assets which were exempt under the statute to the payment of the debt. In the instant case had Bosler demanded payment in order to induce him to desist from pursuing the criminal case against Shuck those circumstances would have resulted in an obvious abuse of process.

An examination of Instruction No. 3, given by the court in this case and quoted above, discloses that it does not inform the jury of the second standard element of the tort of abuse of process. Indeed, the instruction perhaps more nearly describes the tort of malicious use of process than that of the tort of abuse of process. See, e.g., *Casa Di Sardi, Inc. v. Alpha Motors, Inc.,* supra; *Manufacturers Supply Co. v. Parker,* supra. It is to be remembered, however, that based upon its conclusion that there was no material issue of fact the trial court granted a summary judgment in favor of Bosler with respect to the tort of malicious use of process. The affirmative act involved in the use of the process which is not proper to the regular prosecution of the proceedings is necessary for this tort to exist. *Holiday Magic, Inc. v. Scott,* supra.

■ We then consider the record in this case to determine whether a verdict finding the tort of abuse of process could be supported by this evidence. If such a verdict could be supported, the case would have to be remanded for a new trial based upon the instructional error. If the evidence would not sustain such a verdict, the judgment would properly be reversed. A scrutiny of this record discloses that there may be ample evidence from which the jury could infer the first element of the tort of abuse of process, i.e., an ulterior purpose or motive. There is no evidence of any affirmative act manifesting a perversion of the process. It would appear to be Shuck's position that the jury properly could infer the act from an improper motive. The contrary proposition is well established, and in treating with abuse of process the fact finder cannot infer any improper act simply from the presence of the improper motive. Prosser & Keeton, supra, § 121 at 898.

The trial court erred in giving an improper instruction with respect to the elements of the tort of abuse of process. Because the record would not sustain a verdict based upon a proper instruction, the judgment of the district court must be reversed.