**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 29, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TETON MILLWORK SALES, a
Wyoming corporation,

      Plaintiff-Appellant,

v.

ROGER SCHLOSSBERG,

      Defendant-Appellee.

No. 10-8073
(D.C. No. 2:07-CV-00014-ABJ)
(D. Wyo.)

**ORDER**

Before **MURPHY**, **HARTZ**, and **GORSUCH**, Circuit Judges.

Appellant's petition for rehearing is granted in part for the limited purpose

of removing the last sentence of the first paragraph on page 9 in our original order

and judgment filed on August 23, 2011, and substituting another sentence.  We

remove the sentencing stating: "Thus, contrary to TMS's assertion, the orders did

not limit Mr. Schlossberg to only the 25% stock interest of Mr. Palencar."  We

substitute this sentence: "Thus, Mr. Schlossberg's actions with respect to TMS

did not demonstrate that he acted with an ulterior motive or willfully misused the

process for an improper purpose."  Otherwise, the petition for rehearing is denied.

A copy of the modified order and judgment is attached to this order.

The petition for rehearing en banc was transmitted to all of the judges of

the court who are in regular and active service.  No member of the panel and no judge in regular active service on the court requested that the court be polled on rehearing en banc, so en banc rehearing is denied.

Entered for the Court,

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

August 23, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TETON MILLWORK SALES, a
Wyoming corporation,

        Plaintiff-Appellant,

v.

ROGER SCHLOSSBERG,

        Defendant-Appellee.

No. 10-8073
(D.C. No. 2:07-CV-00014-ABJ)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **HARTZ**, and **GORSUCH**, Circuit Judges.

This is the second time this case has been before us. We previously

reversed the dismissal of Teton Millwork Sales' (TMS) claims against Roger

Schlossberg for abuse of process and fraud, and we remanded for further

proceedings. *Teton Millwork Sales v. Schlossberg*, 311 F. App'x 145, 146, 152

(10th Cir. 2009). After holding a bench trial, the district court again entered

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

judgment in favor of Mr. Schlossberg, concluding that TMS's claims were meritless, and, alternatively, that they were time-barred under West Virginia law and that Mr. Schlossberg was entitled to immunity. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's merits determinations, and therefore need not consider the court's alternative determinations.

## I. BACKGROUND

> The present case arises from contentious divorce proceedings in a West Virginia Family Court, in which Mary Palencar sought and secured a divorce from her husband, Michael Palencar. During the divorce proceedings, the court appointed Mr. Schlossberg as [trustee and special receiver] to collect assets in which Mr. Palencar held an ownership interest so that they would be available to satisfy the court's orders.

*Teton Millwork Sales*, 311 F. App'x at 146-47. Recognizing that Mr. Schlossberg would act outside of West Virginia in order to carry out his duties, the West Virginia court entered an order on January 8, 2004, giving Mr. Schlossberg the broadest possible powers of a receiver and trustee to obtain Mr. Palencar's assets. The court amended that order on January 14 to expressly state that Mr. Schlossberg could obtain the assets of TMS,[1] a Wyoming corporation in

---

[1] In relevant part, the order stated:

> It was and remains the intention of the Court by the aforesaid appointment of Roger Schlossberg both as Trustee and as Special Receiver that the said Roger Schlossberg, Trustee/Special Receiver be vested with the broadest possible powers of a Trustee or Receiver acting within the equitable power of this Court and the common law

(continued...)

-2-

which Mr. Palencar held a 25% interest.[2]  Noting that assets of other entities, including TMS, were located outside of West Virginia, the court "authorized and directed" Mr. Schlossberg "to take such action as may appear necessary or desirable to obtain ancillary jurisdiction of these proceedings in such other States . . . as may appear appropriate."  Aplt. App., Vol. III at 1083-84 (capitalization omitted).

Proceeding under this authority, Mr. Schlossberg seized the mail and financial assets of TMS.  The financial assets seized included a checking account at the First National Bank of Wyoming in the amount of $415.96, a securities account with Ferris Baker Watts in the amount of $27,050.19, and a securities

---

[1](...continued)
> of this State to investigate the financial and other affairs of the Respondent Michael Palencar and to be vested with actual legal and equitable title to and the right to obtain record title to and/or liens upon and/or actual physical custody and possession of all of the assets of the Respondent Michael Palencar (whether held by the said Respondent, either alone or jointly with any other person or entity, in his own name or in the name of any alias . . . or in the name of any other entity, including . . . Teton Millwork Sales) as is required to satisfy by sale, liquidation or other execution the aforesaid Judgment and all of the other Orders heretofore entered in these proceedings and as hereafter may be entered with respect to the existing and prospective obligations herein of the said Respondent Michael Palencar.

Aplt. App., Vol. III at 1082 (footnote concerning Mr. Schlossberg's right to receive all mail addressed to TMS omitted).

[2]    Mr. Palencar's father and two brothers each also held a 25% interest.

account with American Express in the amount of $33,190.23.[3]  In seizing the

assets, Mr. Schlossberg presented to these financial institutions the West Virginia

Family Court's January 8 and 14, 2004 orders.  The provided copy of the

January 14 order, however, did not include the third page, containing the

language about obtaining ancillary jurisdiction if necessary.[4]  Each of the

financial institutions, through its legal counsel, authorized the release of funds to

Mr. Schlossberg.

After TMS learned of the asset seizures, it filed suit in Wyoming state court

asserting that Mr. Schlossberg committed abuse of process and fraud.

> TMS alleged that Mr. Schlossberg exceeded his authority by seizing
> TMS's assets in Wyoming, as well as its proprietary information and
> mail, even though he knew that Mr. Palencar was only a twenty-five
> percent shareholder in TMS and that there was no evidence to justify
> piercing the corporate veil of TMS.  TMS's complaint also alleged
> that Mr. Schlossberg falsely represented to various third parties that
> he had legal authority to seize TMS's assets in Wyoming, while
> intentionally failing to mention that he was required to but had not
> obtained ancillary jurisdiction in Wyoming.  According to the
> complaint, Mr. Schlossberg never obtained ancillary jurisdiction in
> Wyoming by securing a Wyoming court order prior to making these
> seizures.  TMS also alleged that Mr. Schlossberg threatened TMS's
> agents with financial penalties if they accepted instructions from
> TMS and provided them with incomplete and misleading documents
> relating to his legal authority to seize TMS's assets.

*Teton Millwork Sales*, 311 F. App'x at 147 (record citations omitted).

---

[3]  We refer to these three as the financial institutions.

[4]  The order did not contain page numbers.  Apparently, no representative
from any of the financial institutions noticed this, and therefore no one requested
the missing page.

Mr. Schlossberg removed the case to federal court and filed a motion to dismiss. The district court granted the motion, determining that Mr. Schlossberg was entitled to absolute immunity while serving as a court-appointed receiver. On appeal, we reversed and remanded, concluding that TMS had asserted sufficient facts to show it was plausible Mr. Schlossberg was not entitled to absolute immunity because he was not acting under the West Virginia court's order of January 14, 2004, when he seized assets that did not belong to Mr. Palencar. *Id.* at 149-52.

Upon remand, the district court held a bench trial. In a lengthy order, the court ruled in favor of Mr. Schlossberg. The court concluded as a matter of law that there was no merit to either the abuse of process or fraud claims. With respect to abuse of process, the court determined that it was within Mr. Schlossberg's discretion as a trustee and special receiver, and within the contemplation of the West Virginia Family Court orders, to obtain Mr. Palencar's assets, regardless of how titled, from the financial institutions cooperatively without first obtaining ancillary jurisdiction in a Wyoming court. Also, the district court determined that Mr. Schlossberg had no ulterior motive in obtaining Mr. Palencar's assets and was merely performing his duties as a trustee and special receiver for the West Virginia court when he collected them. Even if Mr. Schlossberg had acted erroneously, the district court decided, TMS did not show that he used the legal process for an ulterior purpose.

With respect to the fraud claim, the district court determined that there was no evidence that Mr. Schlossberg intentionally made false statements to the three financial institutions. Nor did the court find evidence of any false statements or representations to TMS. Thus, the court concluded that TMS failed to prove fraud by clear and convincing evidence.

Alternatively, the court held that the abuse of process and fraud claims were barred by the West Virginia two-year statute of limitations, W. Va. Code § 55-2-12, and that Mr. Schlossberg was entitled to qualified immunity. Finally, the district court determined that Mr. Schlossberg, acting upon direction of the West Virginia Family Court, properly returned TMS's remaining assets after settlement of the divorce action by delivering the assets to Mr. Palencar or to his attorney. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

"[W]e review the district court's factual findings [after a bench trial] for clear error and its legal conclusions de novo." *United States v. Apollo Energies, Inc.*, 611 F.3d 679, 683 (10th Cir. 2010) (quotation marks omitted). "A finding of fact is not clearly erroneous unless it is without factual support in the record, or unless the court after reviewing all the evidence, is left with a definite and firm conviction that the district court erred." *Id.* at 683-84 (quotation marks omitted). "In conducting this review, [w]e view the evidence in the light most favorable to

the district court's ruling and must uphold any district court finding that is permissible in light of the evidence." *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1183 (10th Cir. 2009) (alteration in original) (quotation marks omitted).

## B. Abuse of Process

Like the district court, we consider first TMS's abuse of process claim. An abuse of process occurs when court process is willfully misused for an improper purpose. *See Bosler v. Shuck*, 714 P.2d 1231, 1234 (Wyo. 1986); *Preiser v. MacQueen*, 352 S.E.2d 22, 28 (W. Va. 1985).[5] The elements of this tort are "(1) an ulterior purpose; and (2) a willful act in the use of the process which is not proper in the regular conduct of the legal proceeding." *Drake v. McCulloh*, 43 P.3d 578, 586 (Wyo. 2002) (quotation marks omitted); *accord Preiser*, 352 S.E.2d at 28 & n.8 (listing same two essential elements). "'Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required . . . .'" *Toltec Watershed Improvement Dist. v. Johnston*, 717 P.2d 808, 811 (Wyo. 1986) (quoting Prosser & Keeton, Torts § 121, p. 898 (5th ed. 1985)); *accord Preiser*, 352 S.E.2d at 28 n.8 (setting forth same requirement).

TMS argues that the district court erred in not concluding it had proved

---

[5] Because the law of Wyoming and West Virginia with regard to abuse of process and fraud are the same, we, like the district court, need not determine which state's law applies.

abuse of process as a matter of law. More specifically, it argues that the January 8 and 14, 2004, orders authorized Mr. Schlossberg to seize assets Mr. Palencar had an interest in, which, in the case of TMS, was only a 25% stock interest, yet Mr. Schlossberg used the orders to convince the financial institutions to transfer all of TMS's assets to him. Thus, TMS contends the district court's conclusions that Mr. Schlossberg had no ulterior motive in seizing all of TMS's assets and that the West Virginia court orders permitted him to seize all of TMS's assets should be reversed.

In addition, TMS argues that the court improperly required it to prove that Mr. Schlossberg acted with malice or an intent to harm when the court decided that even if his actions were erroneous, "it does not demonstrate that he had an ulterior purpose or a willful act in the use of process," Aplt. App., Vol. I at 145. Rather, TMS argues, it should have been required to prove only that Mr. Schlossberg had an improper purpose in collecting its assets. Lastly, TMS faults the district court for requiring it to prove that Mr. Schlossberg's requests for cooperation by the financial institutions were improper; TMS contends it was required to show only that the financial institutions complied with Mr. Schlossberg's demands.

We conclude that it was not clearly erroneous for the district court to find that Mr. Schlossberg neither acted with an ulterior motive nor willfully misused the process for an improper purpose. The West Virginia Family Court's

-8-

January 8 and 14, 2004, orders directed him to take possession of Mr. Palencar's assets, including assets held in the name of TMS, so that the assets would be available for distribution in the divorce proceedings. Indeed, the orders stated that Mr. Schlossberg would be vested with legal and equitable title to assets owned by Mr. Palencar in his own name or in the name of TMS.[6] Thus, Mr. Schlossberg's actions with respect to TMS did not demonstrate that he acted with an ulterior motive or willfully misused the process for an improper purpose.

Mr. Schlossberg's failure to obtain ancillary jurisdiction was not an abuse of process. Regardless of whether he obtained ancillary jurisdiction, he still acted with the purpose to seize Mr. Palencar's assets for the West Virginia Family Court. The West Virginia Family Court orders did not require him to obtain ancillary jurisdiction in Wyoming before he could approach the financial institutions holding TMS's assets, all three of which voluntarily released funds. And, contrary to TMS's assertion, the district court did not require it to show that Mr. Schlossberg acted with malice or an intent to harm in order to establish that he acted with an ulterior purpose.

---

[6] Mr. Schlossberg contends that TMS is judicially and collaterally estopped from asserting that the West Virginia Family Court orders did not permit him to seize TMS's property, because neither Mr. Palencar nor TMS appealed a West Virginia Circuit Court order holding that the family court judge was entitled to absolute judicial immunity for entering the January 8 and 14 orders. We do not address this assertion, because it was never raised or addressed in the district court.

Accordingly, we conclude that Mr. Schlossberg used the process for the purpose for which it was intended: to obtain Mr. Palencar's assets to satisfy the orders entered by the West Virginia Family Court. No evidence indicated that he used the process for "an immediate purpose other than the purpose designed and intended," *Toltec Watershed Improvement Dist.*, 717 P.2d at 811. We therefore uphold the district court's legal conclusion that there was no abuse of process.

## C. Fraud

We next consider TMS's fraud claim. The following elements must be proven to show fraud: "(1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages." *Birt v. Wells Fargo Home Mortg., Inc.*, 75 P.3d 640, 656 (Wyo. 2003) (quotation marks omitted); *accord Lengyel v. Lint*, 280 S.E.2d 66, 69 (W. Va. 1981) (stating essential elements of fraud are "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." (internal quotation marks omitted)). Fraud must be proven by clear and convincing evidence. *Birt*, 75 P.3d at 656; *Bowling v. Ansted Chrysler-Plymouth-Dodge, Inc.*, 425 S.E.2d 144, 148 (W. Va. 1992).

TMS argues that the district court erred in concluding that it failed to show

-10-

fraud, because it showed that Mr. Schlossberg made representations, the representations were relied on by the financial institutions, and assets were transferred to Mr. Schlossberg. TMS contends it established an agency relationship between TMS and the financial institutions, who had control over and who transferred TMS's assets to Mr. Schlossberg at his request. Additionally, TMS maintains that the financial institutions did not voluntarily transfer assets to Mr. Schlossberg, because they did not receive the third page of the January 14 order mentioning the need to obtain ancillary jurisdiction in Wyoming courts, and because Mr. Schlossberg informed them that they faced substantial financial risk if they failed to comply with his demands.

The district court's finding that Mr. Schlossberg did not make false representations to TMS or to the financial institutions was not clearly erroneous. TMS presented no evidence of false statements. It presented no evidence indicating what communications legal counsel from the financial institutions relied upon when deciding to release funds.

The incomplete January 14, 2004, order was not a misrepresentation, because the January 8, 2004, order, which was also provided, included the ancillary jurisdiction language. Also, the letters to the financial institutions, indicating that they would be subject to substantial financial risk if they paid money to anyone or accepted instructions from anyone other than Mr. Schlossberg, did not set forth misrepresentations, in light of the January 8

-11-

and 14 orders stating that he had title to TMS's assets.  Accordingly, we conclude that the district court's finding that there was no fraud was not clearly erroneous.[7]

## D.  Return of Assets to TMS

Lastly, TMS argues that the district court erred in concluding that Mr. Schlossberg properly returned at the direction of the West Virginia Family Court the TMS assets remaining after the final divorce settlement by delivering the assets to Mr. Palencar or to his attorney.  We conclude that there was no error.  Mr. Palencar was the manager of TMS, as well as its secretary/treasurer.  Thus, it was appropriate for Mr. Schlossberg to return the assets to Mr. Palencar, who handled all financial matters for TMS.

---

[7]     We need not specifically address the question of agency because we affirm on the basis that there were no misrepresentations.  But we do note that, typically, a bank does not act as an agent for a depositor.  *Cf. Spratt v. Sec. Bank of Buffalo, Wyo.*, 654 P.2d 130, 135 (Wyo. 1982) (citing *Gray v. Elliott*, 255 P. 593, 594 (Wyo. 1927), and recognizing that bank is debtor, not agent, with respect to general deposits); *see also U.S. Fid. & Guar. Co. v. Home Bank for Sav.*, 88 S.E. 109, 110 (W. Va. 1916) ("The relationship of banker and depositor is that of debtor and creditor . . . .").

## III. CONCLUSION

The judgment of the district court is AFFIRMED.[8]  TMS's request that we disregard documents included in Mr. Schlossberg's supplemental appendix that were not offered at trial is DENIED as moot.[9]

Entered for the Court

Michael R. Murphy
Circuit Judge

---

[8]    Mr. Schlossberg requests that his costs be awarded.  Under Federal Rule of Appellate Procedure 39(a)(1), costs are taxed against the appellant when a judgment is affirmed.  In order to obtain his costs, Mr. Schlossberg must comply with Rule 39(d).

[9]    The documents are part of the entire district court record in this case.  In any event, they were not required to decide this appeal.