Harlan B. COSNER, Appellant (Plaintiff),

v.

Shari L. RIDINGER, f/k/a Shari L. Cosner, f/k/a Shari L. Espy; Alan Claire Zimmerman; Scott P. Espy; John H. Bluher; Kathleen A. Hunt; Smith, Stanfield & Scott, Attorneys at Law; and Michael M. Hoch, Appellees (Defendants).

No. 93–220.

Supreme Court of Wyoming.

Oct. 14, 1994.

Mrg Simon of Morrill, Brown & Thomas, Rapid City, SD, for appellant.

Cary R. Alburn, III, Laramie, for appellee Ridinger.

Glenn A. Duncan, Laramie, for appellee Zimmerman.

University of Wyoming Legal Services Program, John M. Burman, Faculty Advisor, Paula J. MacMurdo and Susan L. Sellers, Student Interns, Laramie, for appellee Scott P. Espy.

Bruce A. Salzburg of Herschler, Freudenthal, Salzburg, Bonds & Rideout, P.C., Cheyenne, for appellee Bluher.

J. Patrick Hand of Hand & Campbell, P.C., Douglas, for appellees Hunt and Smith, Stanfield & Scott.

Michael M. Hoch, Laramie, for appellee Hoch.

Before GOLDEN, C.J., and THOMAS, CARDINE *, MACY and TAYLOR, JJ.

THOMAS, Justice.

The problems presented in this case arise out of a claim of wrongful interference with parental rights. After his complaint was dismissed for failure to state a claim, this appeal was taken by Harlan B. Cosner (Cosner) who is the natural father of the child. The other parties include the mother (Ridinger), the maternal grandmother (Zimmerman), a second husband (Espy), and several attorneys, including the firm of one attorney, who represented the parties in proceedings relating to the custody and guardianship of the child. The primary issue is whether the complaint states sufficient facts to allege a claim for interference with parental rights. Dependent claims for intentional infliction of emotional distress, negligence, and abuse of legal process were dismissed. In addition, Cosner resists the application of the statute of limitations to the claim against the attorneys who

are named as defendants. We are satisfied the trial court ruled correctly in dismissing the complaint for failure to state a claim upon which relief can be granted, and there were no other errors found in the record. The order of dismissal with prejudice is affirmed.

Cosner, in his Appellant's Brief, presents the following issues for review:

I. Is the Complaint sufficient to state a cause of action for intentional infliction of emotional distress against Defendants Mother, Grandmother, and Second Husband?

II. Is the Complaint sufficient to state a cause of action for interference with parental rights?

III. Does Appellant's claim for interference with parental rights against the Attorney–Defendants fall within the statute of limitations?

IV. Is the Complaint sufficient to state a cause of action for negligence against the Attorney–Defendants?

 A. Is the duty to provide notice imposed by constitutional law?

 B. Is the duty to provide notice imposed by statute?

 C. Do the Attorney–Defendants owe the duty to provide notice to Father?

V. Is the Complaint sufficient to state a cause of action for abuse of legal process against the Defendants?

In the Brief of Appellee Shari L. Ridinger, the issues are described in this way:

For purposes of this Appellee's Brief, it is not necessary for us to address issues III and IV, listed in Appellant's Brief, as they do not apply to this Appellee. We have no quarrel with Appellant's description of the issues presented, with regard to issues I, II, and V. They are the only issues applicable to this Appellee.

In the Brief for Appellee Zimmerman, this statement of the issues is incorporated:

Does the Appellant's Complaint state a recognizable cause of action against the Defendant Grandmother under Wyoming law? The issues being whether or not the

* Retired July 6, 1994.

grandmother owed a duty to hunt down and notify the Appellant of her Wyoming guardianship proceeding to the extent that the breach of that duty would constitute negligence, intentional infliction of emotional distress, abuse of process or interference with parental rights on her part.

In the Brief of Appellee Scott P. Espy, the issues are stated to be:

A. Should this Court recognize the proposed tort of interference with the non-custodial parent's visitation rights?

B. Did the Plaintiff allege sufficient facts to support a cause of action for abuse of process?

C. Did the Plaintiff allege sufficient facts to support a cause of action for intentional infliction of emotional distress?

Briefs also have been submitted by the attorneys who are named as parties in this case. In the Brief of Appellee John H. Bluher, the issues are stated in this way:

Whether Appellee Bluher owed any duty to Appellant, the breach of which constitutes negligence, to notify him of a petition for guardianship filed in December of 1984, when the statute governing such actions required no such notice?

Whether, on the facts of this case, a claim exists sounding in abuse of process?

Whether this court should recognize the tort of interference with parental rights, and if so, whether the court should make counsel for a tortfeasor personally liable for the conduct of his client?

The issues articulated in the Brief of Appellees, Kathleen A. Hunt, and Smith, Stanfield & Scott, Attorneys at Law, are:

A. Should Appellant's Appeal be dismissed for substantial non-compliance with Wyoming Rules of Appellate Procedure?

B. Should Appellant's Complaint be dismissed pursuant to Appellee's (Hunt and Smith Stanfield & Scott) Motion to Dismiss and Affidavit of Non–Involvement?

C. Should the Trial Court's Decision and Order of Dismissal be upheld on any of several grounds?

In the Brief of Appellee—Michael M. Hoch, this statement of the issues appears:

Did Attorney Hoch have a legal duty to notify Cosner of the Habeas Corpus Proceedings as filed on Ridinger's behalf?

Did Attorney Hoch have a legal duty to notify Cosner of the guardianship proceedings as filed on Zimmerman's behalf?

Did Attorney Hoch's conduct result in "abuse of process"?

Is the tort "interference with parental rights" cognizable in Wyoming in light of the facts herein?

In Cosner's Appellant's Reply Brief, additional issues are encompassed which are stated to be:

I. Have the parties complied with the Wyoming Rules of Appellate Procedure?

A. Has Appellant complied with the Rules?

B. Have the Appellees Bluher, Hunt, Smith, Stanfield & Scott, and Hoch failed to comply with substantive provisions of the Rules?

\* \* \* \* \* \*

(II. through VI. are identical to issues in Cosner's Appellant's Brief.)

VII. Did the trial court properly deny the motion to dismiss based on the affidavit of non-involvement of Hunt and the Law Firm? (Issues II through VI are repetitions of the issues incorporated in Cosner's Appellant's Brief.)

The facts in this case cover a period of more than ten years. Cosner and Ridinger are the parents of April Lynn Cosner (April) who was born on April 6, 1980. The couple were married in Oregon and, not long after the marriage, the family moved to Lowry Air Force Base near Aurora, Colorado, where Cosner was stationed. In 1981, Ridinger returned to Oregon, with April, where Ridinger filed for divorce. That divorce was granted in late May or early June of 1982. Under the decree, Ridinger was awarded physical custody of April, and Cosner received visitation rights. Sometime in July of 1982 Cosner remarried. Ridinger also remarried. Espy was Ridinger's new husband, and they moved to Laramie with April.

Ridinger and Espy then were divorced in December of 1984. Bluher represented Espy in the divorce proceedings. In accordance with an agreement with Ridinger, Espy assumed the care and custody of April in Wyoming. Espy then filed a petition for guardianship of April, still represented by Bluher. On the same day, Ridinger filed a petition for guardianship in the district court of Albany County, in which she requested that Espy be appointed the legal guardian of April. Espy's request for guardianship was never disposed of by court order, but he maintained custody of April for about the next six years.

A dispute then arose between Ridinger and Espy, and Ridinger filed a Petition for a Writ of Habeas Corpus in Albany County, in which she sought to have April returned to her custody. The petition was filed by Ridinger's attorney, Hoch. In the habeas proceeding, Espy was represented by Hunt of the firm of Smith, Stanfield & Scott. A little more than four months later, Zimmerman filed her petition for guardianship of April, also in Albany County. Zimmerman was represented by Hoch in connection with her petition for guardianship. Ultimately, Espy consented to Zimmerman's guardianship of April, and he withdrew his petition. A final order was entered appointing Zimmerman as April's guardian, with Espy appointed as successor guardian. April then moved to Oregon to live with Zimmerman. Cosner and Ridinger now reside in Oregon as well.

On March 25, 1993 Cosner filed his complaint, in which all the appellees were named as defendants, in the district court for the Second Judicial District in Albany County. In his complaint, Cosner alleged that Ridinger, Zimmerman, and Espy intentionally interfered with his parental rights, and he also alleged they had committed negligent interference with his parental rights. He alleged Ridinger removed April from Oregon and hid her from him for nine years, assisted by Espy and Zimmerman. He also charged Ridinger, Zimmerman, and Espy with intentional infliction of emotional distress in concealing his daughter and preventing his visitation with her. As to the attorneys, Cosner alleged negligence in failing to use due dili-

gence to locate him and provide him with notice of the guardianship and habeas corpus proceedings involving April. He also charged abuse of legal process as a tort committed by all the defendants.

All defendants filed motions to dismiss the complaint. On October 6, 1993, the district court entered its final order, dismissing Cosner's complaint with prejudice as to all parties, on the ground that it failed to state a claim or cause of action. Cosner appeals from that order.

In treating with the primary issue, Cosner urges this court to recognize the tort of intentional interference with parental rights as a valid claim in Wyoming. He contends his complaint adequately alleged the commission of this tort by Ridinger, Zimmerman, and Espy, and the commission of the tort of negligent interference with his parental rights by the attorneys. After citing a line of cases in which the tort has been recognized in a number of jurisdictions, Cosner lists the elements for a claim of interference with parental rights as follows:

First, the plaintiff must claim a parental right, either in terms of the right to custody **or visitation,** to contact with the child. Second, it must be alleged the plaintiff was deprived of such contact with the child. Third, it must also be claimed such deprivation was a result of a negligent or intentional act of the defendant(s). Some courts have also held the plaintiff must allege the existence of a prior positive relationship with the child. (Emphasis added, citation omitted.)

■ Cosner's statement of the first element, in which he alludes to a parent's right to custody **or visitation** as a prerequisite to stating a claim, is misleading. The jurisdictions recognizing this tort have limited the cause of action to the custodial parent and have not extended it to a non-custodial parent who is somehow deprived of visitation privileges. *See Hinton v. Hinton,* 436 F.2d 211 (D.C.Cir.1970), *aff'd,* 492 F.2d 669 (D.C.Cir.1974); *Gibson v. Gibson,* 15 Cal. App.3d 943, 93 Cal.Rptr. 617 (1971); *Brown v. Brown,* 338 Mich. 492, 61 N.W.2d 656 (1953); *Oversmith v. Lake,* 295 Mich. 627, 295 N.W. 339 (1940); *Pickle v. Page,* 252

N.Y. 474, 169 N.E. 650 (1930); *Lisker v. City of New York,* 72 Misc.2d 85, 338 N.Y.S.2d 359 (1972); *McBride v. Magnuson,* 282 Or. 433, 578 P.2d 1259 (1978); *McEvoy v. Helikson,* 277 Or. 781, 562 P.2d 540 (1977).

Many of these jurisdictions have recognized the claim for interference with parental rights based upon this language from the RESTATEMENT (SECOND) OF TORTS § 700 (1977):

> One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent.

Comment c. to the RESTATEMENT (SECOND) OF TORTS § 700 explains:

> *When both parents entitled to custody and earnings.* When the parents are by law jointly entitled to the custody and earnings of the child, no action can be brought against one of the parents who abducts or induces the child to leave the other. When by law only one parent is entitled to the custody and earnings of the child, only that parent can maintain an action under the rule stated in this Section. One parent may be liable to the other parent for the abduction of his own child if by judicial decree the sole custody of the child has been awarded to the other parent.

We are satisfied neither the pertinent authority from other jurisdictions, nor the RESTATEMENT (SECOND) OF TORTS § 700 supports the cause of action for interference with parental rights in this case. Cosner is not the custodial parent. We agree with the rationale set forth in *Politte v. Politte,* 727 S.W.2d 198 (Mo.Ct.App.1987). The Missouri Court of Appeals articulated the proposition that the visitation rights of a parent are not sufficiently significant to be protected by this court.

Furthermore, several jurisdictions have refused to adopt this cause of action, even in the case of the custodial parent, based upon the overriding public policy of what is in the best interests of the child. *Zaharias v. Gammill,* 844 P.2d 137 (Okla.1992); *Larson*

*v. Dunn,* 460 N.W.2d 39 (Minn.1990). This public policy rationale was stated by the Minnesota court as follows:

> Evidence is piling up that children can be devastated by divorce, and their continuing development can be detrimentally affected by subsequent events. * * *

> For the good of our children, the law should seek to promote such harmony as is possible in families fractured by the dissolution process. At a minimum, the law should not provide a means of escalating intrafamily warfare. * * *

> It is clear that this tort would be used as a new weapon in such disputes. * * * The interest in compensation should not outweigh the effects of bitter accusations on young children. * * *

> Creating this tort would *create* a new wrong. It would place innocent children in the middle of a vigorous, probably vicious, lawsuit between their parents.

*Larson,* 460 N.W.2d at 45–46 (citations omitted).

Wyoming has adopted as its public policy a paramount concern for the best interests of the child in connection with child support, custody, and visitation. That policy is articulated in WYO.STAT. § 20–2–113 (Cum.Supp. 1993), which states in pertinent part:

> (a) In granting a divorce or annulment of a marriage, the court may make such disposition of the children as appears most expedient and beneficial **for the well-being of the children.** * * * If the court finds that both parents have shown the ability to act **in the best interest of the child,** the court may order any arrangement that encourages parents to share in the rights and responsibilities of rearing their children * * * The court which entered the decree has continuing subject matter and personal jurisdiction to enforce or revise the decree concerning the care, custody, visitation and maintenance of the children as the circumstances of the parents and the **benefit of the children requires.** * * * The court shall consider evidence of spouse abuse or child abuse as being contrary to **the best interest of the child.** (Emphasis added.)

Our cases echo this overriding interest in the best interests of the child in connection with child support and custody determinations. *See e.g., Love v. Love,* 851 P.2d 1283 (Wyo. 1993); *Martin v. Martin,* 798 P.2d 321 (Wyo. 1990); *Yates v. Yates,* 702 P.2d 1252 (Wyo. 1985).

We are satisfied no other jurisdiction would recognize this tort of intentional or negligent interference with parental rights in an instance in which it is asserted by a non-custodial parent. We decline to depart from that view and recognize the tort in this case. As to that claim, Cosner's complaint fails to state a claim upon which relief can be granted. The Order of Dismissal With Prejudice is affirmed as to these asserted causes of action.

■ Turning to the claim for intentional infliction of emotional distress, we see no justification for recognizing Cosner's claim against Ridinger, Zimmerman, and Espy. In *Leithead v. American Colloid Co.,* 721 P.2d 1059 (Wyo.1986), we adopted the RESTATEMENT (SECOND) OF TORTS § 46 (1977) as the definition for intentional infliction of emotional distress:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Comment d. to the RESTATEMENT (SECOND) OF TORTS § 46 defines outrageous conduct as that which goes "beyond all bounds of decency, and [is] to be regarded as atrocious, and utterly intolerable in a civilized community." Comment j. to the same section defines severe emotional distress as that which "is so severe that no reasonable man could be expected to endure it." In *Leithead,* 721 P.2d at 1067, we gave this example of what was not intentional infliction of emotional distress:

> The ordinary person who is fired from his job might worry about his future and his ability to pay his bills. He might also lose sleep over it. But this is the kind of distress with which the ordinary person must be expected to cope. Appellant's allegations of distress are insufficient to create a jury question on the severity issue. We can safely say, as a matter of law, that his distress is not so severe as to be compensable.

*See Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 235 (Wyo.1994).

It is against this background that Cosner's complaint against Ridinger, Zimmerman, and Espy must be analyzed. The complaint essentially alleges extreme and outrageous conduct based on either knowingly and intentionally concealing April or, in the alternative, preventing Cosner from any contact or visitation with her.[1] The essence of the special damages alleged in the complaint arising from intentional infliction of emotional distress is "expenses for legal and psychological counseling."

■ This second cause of action in the complaint alleges the identical conduct asserted as the basis for intentional interference with the parental rights claim. We have held that conduct does not suffice to state a tort claim for intentional interference with parental rights, and there are no facts alleged in the complaint supporting the in-

---

1. The complaint alleges in Count III, Paragraph 44:

 Ridinger's conduct in knowingly and intentionally concealing April and preventing Plaintiff [Cosner] from any contact with April has been extreme and outrageous and has caused Plaintiff severe emotional distress to the extent that no reasonable man could be expected to endure said conduct in that Plaintiff has been denied the opportunity to establish any relationship with April.

The complaint alleges in Count IV, Paragraph 49:

 Zimmerman's conduct in knowingly and intentionally preventing Plaintiff from visiting April has been extreme and outrageous and has caused Plaintiff severe emotional distress to the extent that no reasonable man could be expected to endure said conduct.

The complaint alleges in Count V, Paragraph 54:

 Espy's conduct in knowingly and intentionally concealing April and preventing Plaintiff from any contact with April has been extreme and outrageous and has caused Plaintiff severe emotional distress to the extent that no reasonable man could be expected to endure said conduct in that Plaintiff has been denied the opportunity to establish any relationship with April.

tentional concealment of April or any prevention of Cosner from visiting with her. The conclusional allegations by Cosner do not suffice as factual allegations. *Swanson v. Bixler,* 750 F.2d 810 (10th Cir.1984); *Champion Well Serv., Inc. v. NL Indus.,* 769 P.2d 382 (Wyo.1989). Consequently, there is nothing in the record to suggest any conduct by Ridinger, Zimmerman, or Espy was purposely directed against Cosner. As we have stated, "it is not our responsibility to search the record and ferret out material to support allegations of appellants." *May v. Southeast Wyoming Mental Health Center,* 866 P.2d 732, 740 (Wyo.1993).

In his petition for guardianship, Espy asserted, "[t]here is no other known living relative in Albany County or the State of Wyoming except the mother." The allegation in Ridinger's petition was "[t]hat minor [April] has no other relative or family member in Albany County or the State of Wyoming." In Zimmerman's petition, the statement is, "[t]hat there are no blood relatives or natural parents in Laramie able to properly care for my granddaughter [April]." These statements are correct because Cosner was residing either in Oregon or Colorado during the guardianship and habeas corpus proceedings. Furthermore, the statements by Espy and Ridinger were made in accordance with WYO. STAT. § 3–2–101 (1977), which states in pertinent part:

> Before making such [guardianship] appointment, the court or judge must cause notice to be given to any person having the care of such minor, incompetent or insane person, and to the **relatives residing within the county.** (Emphasis added.)

Zimmerman's petition was filed in accordance with the current version of WYO.STAT. § 3–2–102 (1985), which has been amended to state:

> [N]otice of the filing of the petition shall be served upon the proposed ward and his custodian, if any, and his parent, child, or spouse who are known or who can be known with due diligence.

We can find no basis in the record for the proposition that Zimmerman had any knowledge of Cosner's whereabouts at the time she filed her petition. It was filed at least seven years after Cosner and Ridinger were divorced in 1982.

There is no factual allegation in the complaint that would demonstrate the lack of notice to Cosner of the guardianship proceedings was due to intentional or reckless acts of Ridinger, Zimmerman, or Espy which would overstep "all bounds of decency." The conduct of the appellees was not alleged in such a fashion as to cause it to fall within the ambit of "outrageousness" sufficient to state a tort claim for intentional infliction of emotional distress under the RESTATEMENT (SECOND) OF TORTS § 46. We do not choose to enlarge upon the definition in that section to extend it to apply to the facts of this case.

■ As to Cosner's abuse of process claim against all of the appellees, we perceive it to be sophistic. We have defined the elements for a claim of abuse of process as "(1) an ulterior purpose; and (2) a willful act in the use of the process which is not proper in the regular conduct of the legal proceeding." *Mummery v. Polk,* 770 P.2d 241, 243 (Wyo.1989); *Bosler v. Shuck,* 714 P.2d 1231, 1234 (Wyo.1986). *See Toltec Watershed Improvement Dist. v. Johnston,* 717 P.2d 808 (Wyo.1986). Cosner alleges the filing of the various guardianship and habeas corpus proceedings without notice to him constitutes abuse of process. He asserts concealment of April or denial of visitation is the ulterior purpose. The allegations of the complaint do not suffice for this claim. Other than conclusional statements, there are no factual allegations of ulterior purpose. Nothing improper or willful is alleged with respect to the filing of the various actions out of concern for April's livelihood and well-being.

We have resolved Cosner's claims against the attorneys for abuse of process and for negligent interference with parental rights. The abuse of process claim is specious, and we are not willing to recognize a claim for interference with parental rights, either intentional or negligent in this case. Those two issues can be disposed of as well by our holding addressing the allegation of negligence against the attorneys.

■ In deciding Cosner's allegations of negligence against the attorneys for failing to

use due diligence to locate him or to provide him with notice of the guardianship or habeas corpus proceedings, we return to our ruling in *Brooks v. Zebre*, 792 P.2d 196 (Wyo. 1990). In *Zebre*, the trial court ruled that a real estate lease prepared by an attorney, with the assistance of the clients he represented, was unconscionable as to Brooks. The court ordered rescission of the contract and appropriate restitution. Zebre subsequently was granted a summary judgment with respect to Brooks' claims against him for negligence, gross negligence, and fraud. We affirmed the lower court's summary judgment, stating:

> In order to recover for negligence or gross negligence, the plaintiff is required to demonstrate all necessary elements of the tort including the element of a legal duty owed by the defendant to the plaintiff. The issue of whether a duty is owed is strictly a question of law. * * * When we determine, however, that no legal duty exists from a defendant to the plaintiff, a summary judgment with respect to claims of negligence is appropriate and must be affirmed.

*Zebre*, 792 P.2d at 200 (citations omitted). In *Zebre*, 792 P.2d at 201, we agreed with the district court that "an attorney owes no ac-

tionable duty to an adverse party emanating from the zealous representation of his own client."

The situation in this case is analogous. Cosner alleges negligence against attorneys who at no time represented him in any way. Bluher represented Espy; Hoch represented Ridinger and Zimmerman; and Hunt and her firm of Smith, Stanfield & Scott, represented Espy. Cosner's interests are certainly adverse to those of all of the appellees. Following *Zebre*, 792 P.2d at 201, we hold "no cause of action for negligence exists against an attorney for an adversary." Since there was no claim available against the attorneys, we do not address the question of whether the statute of limitations has run against the attorney appellees.

The district court's Order of Dismissal With Prejudice is affirmed in all respects.